## Case No. 8,423.

### The LIZZIE MERRY.

[10 Ben. 140.] [1]

District Court, S. D. New York.   Oct., 1878.

ADMIRALTY—CONTRACTS—POSSESSION—MASTER'S INTEREST.

1. By the agreement made for the building of a vessel, it was agreed that one L., who took an eighth of the vessel, should command and sail her as master. L. afterwards sold his eighth to K., who bought it. expecting to go as master of her, and gave a larger price for the share on that account. After his purchase, one-half of the vessel was owned in Damariscotta, Me., and the other half in Portland, Me. He ran the vessel as master for several voyages; and, the vessel being in New York, he was informed by her agent there that one of the Portland owners had sold out, and that the new purchaser with the Damariscotta owners had joined in appointing M. as master of the vessel. Thereafter M., coming to the vessel when K. was not on board, took possession of her. When K. came to the vessel and found M. on board, there was hard language between them, and M. threatened to have K. arrested. Thereupon K. filed a libel for possession, claiming that he was entitled to be master of the vessel and had been forcibly dispossessed. *Held*, that K. did not purchase from L. any right to continue as master.

2. The right which L. had to sail the vessel as master was neither by the terms of his agreement nor by its own nature transferable, being a contract resting in personal confidence.

3. Under the agreement between K. and the other owners, and under section 4250 of the Revised Statutes of the United States, the majority of the owners had the right to remove K. and appoint M.

4. There had been no forcible dispossession of K. What took place between K. and M., after M had taken possession, was immaterial and the libel must be dismissed.

In admiralty.

Beebe, Wilcox & Hobbs, for libellant.

R. D. Benedict and H. T. Wing, for claimants.

CHOATE, District Judge. The libellant, Howard B. Keazer, who is owner of five thirty-seconds of the vessel, and from December, 1875, to the 23rd day of August, 1878, had been her master, brings this suit against the vessel and the other owners to recover possession of the vessel and to be reinstated in his position as master. He alleges in his libel that one Lawrence was an original owner of four thirty-seconds in the vessel, and contracted for building it, and that it was agreed between Lawrence and the other owners "that he should sail and control said vessel as master and that his interest should be a master's interest and transferable as such;" that in December, 1875, the libellant purchased this interest of Lawrence with the consent and concurrence of the managing owners, and that it was agreed that he should be master so long as he held said interest, and that the other owners have acquiesced therein; that he thereupon became master

1 [Reported by Robert D. Benedict. Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

and has ever since remained such, and that no complaint has ever been made of his conduct as master, and that he has in everything managed the vessel for the best interests of all concerned; that on the 29th of August, 1878, he was forcibly dispossessed of said vessel by one J. F. S. Merry, who claims to have been appointed master.

A majority in interest of the owners appear as claimants and deny the material averments of the libel in respect to the alleged agreement with the libellant. They also deny the forcible dispossession, and allege that Merry is the duly appointed master of the vessel.

The evidence wholly fails to sustain libellant's claim of the alleged agreement either with Lawrence or with himself. Under the agreement with Lawrence, which was in writing, no right is given to Lawrence to transfer, with his share in the vessel, his right to command her. It contained an agreement that he should command and sail the vessel, but that right is not by the terms of the agreement, nor by its nature, transferable. On the contrary, it is a contract in its nature resting in personal confidence and strictly personal. The evidence also does not show any agreement on the part of the other owners with the libellant, at the time of his purchase, that he should continue to command the vessel so long as he held this interest. He bought, and was encouraged to buy, the interest formerly held for the benefit of Lawrence, in the expectation that he would be appointed master, as indeed he was, and he gave for it a larger price than the share was worth to anybody else, because he expected to be master; but nothing took place between the parties impairing in any way the rightful authority of the majority in interest at any time to displace him and appoint another master. The case is also within the provisions of section 4250 of the Revised Statutes, which provides that "any person or body corporate having more than one-half ownership of any vessel, shall have the same right to remove a master, who is also part owner of such vessel, as such majority owners have to remove a master not an owner. This section shall not apply where there is a valid written agreement subsisting, by virtue of which such master would be entitled to possession, nor in any case where a master has possession as part-owner obtained before the 19th day of April, 1872." The alleged contract with the libellant was not in writing, and, therefore, if proved, would not avail him. There was then no legal claim on the part of the libellant, nor any reasonable pretence of such legal claim, that he held his position of master except subject to the will of the majority of the owners. On the 23rd day of August, he was informed by the agent of the majority of the owners, that Merry had been appointed master in his place. He well knew how the title was held. Up to a short time before that day, half the vessel had been owned in

Damariscotta, and half in Portland, Maine. He had been informed that one of the owners known as a Portland owner, had sold out to one of the Damariscotta owners, and that this interest united with the half-interest already held by the Damariscotta owners, to change the master. He does not appear to have objected then that the majority had not joined in this proceeding, but he took the ground that under his master's interest he was entitled to hold the command. I am satisfied with the proof as to the majority having joined in the appointment of the new master. Whatever question might be made as to the execution of the first power of attorney, upon which the name of John F. Stinson appears, a second power was shown to have been given, acknowledged before a notary, and put in the hands of the agent of the owners before he communicated their action to the libellant. After the libellant was informed that a new master had been appointed, and while he was absent from the vessel, the new master came to the vessel and took possession. The evidence does not show that any force was used, or threatened on his part, to obtain possession. If there was anybody on board holding or claiming to hold any authority from the libellant to resist the new master, or to prevent his taking possession peaceably, that person has not been called; nor is there any evidence, whatever, of anything that took place between him and the new master when the latter came on board and assumed command. There is no proof, therefore, of any forcible dispossession. Afterwards, the libellant came and found the new master in possession, and some hard language was used, the libellant insisting on his right, and the new master insisting on his, and threatening an arrest if disturbed; but the possession of the ship was already changed, and this affair is wholly immaterial. The libel is dismissed with costs.